JOHN KIRBY, Appellant, *v.* MONTGOMERY BROTHERS AND COMPANY, Respondent.

**Master and servant — question for jury as to negligence and contributory negligence.**

It is the duty of a master to use reasonable care to provide a reasonably safe place for his servant to work, and the same degree of care is required of him to inspect the place and keep it safe. Whatever source of danger he would discover by reasonable inspection, he is presumed to

know, and constructive notice, through the lapse of time, has the same effect as discovery by actual inspection. The knowledge of his superintendent, clothed with general powers, is the knowledge of the master, and his negligence in failing to inspect and remedy is the negligence of the master.

In a shed used for the storage of lumber, defendant had provided a platform eighteen inches wide along a perpendicular wall as a walk to cross over a driveway from one gallery to another. About five feet above the walk and fastened to the perpendicular wall was an electric light switchbox which projected about six inches from the wall. The walk was strong enough for the purpose for which it was intended and was securely fastened at each end. Plaintiff, who had been ordered by defendant's superintendent to do some work in one of the galleries, reached the platform by a ladder, which was the only means provided, and began to walk across the platform to the other gallery where his duties called him, proceeding by the narrow walk. When he reached the switchbox, and in order to avoid it, he intentionally stepped upon two thin boards lying one upon the other and close to and alongside the platform, but they tipped and broke, and plaintiff was thrown to the driveway below, receiving severe injuries. The boards, although they seemed to widen the walk, were not a part of it, were not strong enough to bear the weight of a man and were not fastened, but had laid beside the platform for a month before the accident, to the knowledge of defendant's superintendent. Plaintiff was ignorant of these facts, and had the right to assume, from their appearance, that the boards were part of the walk and had been placed there to walk upon. While he might have avoided the switchbox without stepping off the platform and on the boards by stooping as he passed, it does not appear that he knew that it was necessary to do so. The defendant was chargeable with actual knowledge of the facts, and, hence, that the boards were so placed as to look like a part of the platform; that they would not support the weight of a man; that they were unfastened, and that if a workman should step on them he would probably be injured. *Held,* that it was error to nonsuit the plaintiff. It was for the jury to say whether he was careless in stepping upon the loose boards instead of stooping to avoid the switchbox, and there was evidence for the jury upon both of the questions usually involved in actions of negligence.

*Kirby* v. *Montgomery Bros. & Co.,* 126 App. Div. 922, reversed.

(Argued November 23, 1909; decided December 7, 1909.)

APPEAL from a judgment, entered September 25, 1908, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, overruling plaintiff's

exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for defendant on a nonsuit granted at the Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frederick G. Bagley* and *Thomas A. Sullivan* for appellant. If from the evidence men of ordinary prudence and discretion might differ as to the character of the acts or if the inference to be drawn from or the significance to be attached to the testimony is doubtful, the question is one of fact for the jury. (*Hayes* v. *Miller*, 70 N. Y. 112; *Nolan* v. *Railroad Co.*, 87 N. Y. 63.) The jury could have found that the defendant was negligent. (*Connelly* v. *H. & G. Construction Co.*, 192 N. Y. 182.) The question of plaintiff's contributory negligence and assumption of risk was for the jury. (*Jenks* v. *Thompson*, 179 N. Y. 26.)

*Clinton B. Gibbs* for respondent.

VANN, J. The plaintiff, while in the employ of the defendant as a common laborer in its lumber yard in the city of Buffalo, alleges that he was seriously injured by the negligence of his master in failing to furnish him a safe place in which to work. The accident occurred in a shed belonging to the defendant used to store lumber for the purpose of selling it at retail. This building was 125 feet long, with a plank driveway in the center, through which delivery wagons were driven in and out. Lumber was stored on either side of the driveway, and about twelve feet above on either side of the space over the driveway were galleries in which lumber was piled in racks. Between the galleries and over the driveway was an open space nine feet five inches wide, used to pass lumber from the galleries down to the wagons below. At one end of this open space a platform composed of planks had been erected, and on the platform a structure called an office extended out a distance of four feet and one inch. The

platform extended eighteen inches beyond the office and this part thereof was used, without a railing, as a walk to cross over from one gallery to the other. Attached to the side of the office and four feet eleven inches above the walk was a switchbox, sixteen inches high, twenty-three inches long and six and three-fourths inches wide, which projected over the walk the distance of its width. The planks of the platform, originally two inches thick but by use worn somewhat thinner, were securely nailed at either end.

For a month before the occasion in question two pine boards, each five and three-fourths inches wide and seven-eighths of an inch thick, had laid one above the other close up to the platform, with both ends unfastened. The combined carrying capacity of these boards, planed, grooved and beaded as they were, when so placed, with both ends supported but not fastened, across a space nine feet five inches wide, was seventy-five pounds. They had been recently planed and were light in color, while the planks were dark. The apparent effect of the boards, thus placed one on top of the other as close to the platform as they could be, was to widen the walk from eighteen inches to twenty-three and three-fourths inches. The situation, as thus described, was well known to the defendant's general superintendent, who was there several times every day. The plaintiff had been ordered by him, when he had nothing else to do, to go up in the galleries and tie up siding. He had been in the employment of the defendant for about three months and had been up in the galleries "a couple of times," but he did not know that the boards were not fastened at the ends, nor that they were unsafe and not intended to form part of the platform.

On the occasion in question the plaintiff started to go to work in the galleries, reached the platform by a ladder which was the only means provided and began to walk across to the other side where his duties called him. Proceeding by the narrow walk, when he reached the switchbox he intentionally stepped with his left foot on the boards, laid one above the other close to the platform, but they tipped, both broke and

he was thrown to the driveway below.   Two of his ribs were broken, the left clavicle fractured, the upper end of the humerus dislocated and he was badly bruised.

He was five feet three and one-half inches in height and his shoulder came below the switchbox, so that by stooping he could have passed without hitting it and without stepping on the boards.   He had formerly bent down as he passed by the box and he could not remember that he had ever stepped on the boards before.   The walk was for the use of the workmen and was the only way to reach the galleries.   The place was well lighted.

The duty of using reasonable care to provide a reasonably safe place for his servant to work in, is cast by law upon the master, and the same degree of care is required of him to inspect the place and keep it safe.   Whatever source of danger the master would discover by reasonable inspection, he is presumed to know, and constructive notice, through the lapse of time, has the same effect as discovery by actual inspection. The knowledge of his superintendent clothed with general powers, is the knowledge of the master, and his negligence in failing to inspect and remedy is the negligence of the master. Acting in the line of his duty, the plaintiff was walking from one part of the building to another over a walk provided by the defendant for that purpose, and under these circumstances the law regards the walk as a place furnished by the defendant for his servants to work in.   If the jury could have found that the walk was unsafe and that the defendant knew or should have known it, the plaintiff had a right to recover damages for the injuries he sustained, provided he was not himself guilty of negligence.

As the plaintiff was non-suited, he is entitled on this review to the most favorable inferences which a reasonable man could draw from the evidence.   We must assume, therefore, that he was walking by a perpendicular wall over a walk eighteen inches wide without the boards, and twenty-three and three-fourths inches with them.   This narrow walk had no railing and it was obstructed to some extent by the switch-

box which projected over it. While, by stooping, he could have passed under the box without hitting it, it does not appear that he knew it was necessary, and it was a natural and ordinary act to step out so as to be certain to avoid the box. From the position of the boards close up to the walk, and their thickness, which, as they were placed one above the other, was about the same as the thickness of the walk, he had the right to assume, as the jury could have found, that they were a part of the walk and had been placed there to walk upon. While he was ignorant of the actual facts, he had a right to rely upon the apparent facts; yet the defendant, through its superintendent and the length of time that the situation had continued without change, was charged with knowledge of the actual facts and, hence, that the boards were so placed as to look like a part of the walk ; that they would not support the weight of a man ; that they were unfastened and that if one of the workmen should step on them he would probably be injured. According to the most favorable but still reasonable view of the evidence to be taken in the interest of the plaintiff, the legal effect of the situation was the same as if the defendant had knowingly placed defective boards, without fastening them, so as to form part of the walk, and the plaintiff, not knowing that they were defective and with reason to believe that they were an extension of the walk and were safe, had stepped upon them in order to avoid hitting the switchbox. He had to stoop or step out and it was for the jury to say whether he was careless in stepping out instead of stooping.

We think there was evidence for the jury upon both of the questions usually involved in actions of negligence and that the motion to non-suit should not have been granted. The judgment should, therefore, be reversed and a new trial ordered, with costs to abide the event.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, WERNER and CHASE, JJ., concur.

Judgment reversed, etc.